## HEATH v. MOORE.

(Court of Civil Appeals of Texas. Ft. Worth. March 16, 1912.)

WITNESSES (§ 159*)—TRANSACTIONS WITH DECEASED.

In an action by a broker for commissions for a sale of land, in which defendant's executrix was substituted upon his death, the issues being as to whether plaintiff was employed, or whether decedent rendered himself liable on an implied contract, testimony by plaintiff as to the details of a trip made by himself and the deceased, in which a strong box belonging to deceased was opened, and an abstract taken out and, after being taken to the courthouse, returned to the plaintiff, related to a transaction with decedent, and was inadmissible under Rev. St. 1895, art. 2302.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 664, 666–669, 671–682; Dec. Dig. § 159.*]

Appeal from Tarrant County Court; C. T. Prewett, Judge.

Action by John M. Moore against E. C. Heath, executrix. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Geo. Q. McGown, A. C. Heath, and T. A. Altman, all of Ft. Worth, for appellant. A. B. Curtis, of Ft. Worth, for appellee.

CONNER, C. J. Appellee, Moore, instituted this suit against T. J. Heath for commissions alleged to be due said Moore on account of having found a purchaser for the homestead of T. J. Heath, near the town of Arlington, in Tarrant county. The defendant was served with process on the 20th day of April, 1910, and thereafter, on the same day, died. By supplemental petition, the death of T. J. Heath was suggested, and Mrs. E. C. Heath, surviving wife and independent executrix of the last will and testament of T. J. Heath, was made party defendant. Appellee sought to recover, first, upon a contract of employment to find a purchaser, and, second, in the alternative, on a quantum meruit for services performed as broker; it being alleged that a purchaser had been found who was ready, willing, and able to pay the price asked by the deceased, Heath, for the property. The answer to the merits was by general denial, and the trial before a jury resulted in a verdict and judgment in appellee's favor for the sum of $500.

In behalf of appellant, it is insisted that the evidence is wholly insufficient to show that T. J. Heath ever contracted, expressly or impliedly, to pay to appellee commissions for procuring a purchaser for the land; but, in the view we have taken of the case, it will not be necessary for us to determine this contention. We think it sufficient to say that it was at least a very closely contested question, and that appellee, evidently in aid of this issue, or in support of his plea of quantum meruit, was permitted to testify, among other things, over objections of appellant, as shown by the following bill of exceptions, viz.:

"Be it remembered that on the trial of this case, on, to wit, the 29th day of March, 1911, the following proceedings were had:

"Plaintiff tendered as a witness the plaintiff himself, J. M. Moore, who, after answering as to other matters, plaintiff's attorney asked said witness to state what he did the next morning after the transaction at the deceased's house, testified to by other witnesses. In response to this question, the witness answered that the deceased, Heath, and himself (plaintiff) came to Ft. Worth. The defendant at this time objected to plaintiff's testifying about this trip to Ft. Worth. The court instructed the witness to tell only what he (witness) did, whereupon, over the objection of the defendant, plaintiff was permitted to testify as follows:

"'I came to Ft. Worth the next morning. I first went to the Reynolds building to Mr. A. C. Heath's office. He is related to Mr. T. J. Heath. He is his son.' At this point, by permission of the court, Mr. Altman asked the witness if deceased, T. J. Heath, was with the witness when he came to Ft. Worth on this occasion, and the witness answered: 'Yes; he was with me during this trip to Ft. Worth about which I am going to testify.' Over objection of defendant, the witness continues: 'Well, we went to Mr. A. C. Heath's office, and got an iron box—' The court sustained defendant's objection and instructed the jury to not consider this evidence. Then the witness continued: 'I mean I went to Mr. Heath's office. I saw an iron box; it was locked. We took the box to a locksmith's'—to which the defendant objected. Then the court sustained defendant's objection, and instructed the jury to not consider this evidence. Then the witness continued: 'I went to the locksmith. The locksmith opened the box. I then went to Mr. Ayres' office. In that box was an abstract and other papers, two or three abstracts. That abstract covered the land un-

der dispute; that is, one of the abstracts covered the property of Heath. These papers were Mr. T. J. Heath's. I think that, besides the abstracts in the box, there were some old deeds. My recollection is not clear as to what property. I have heard that Mr. Ben Ayres is dead. The locksmith's place was located on Houston, on the west side of the street; and when I left there the box was open. From Mr. Ayres' office, we came to the courthouse—' The Court: 'You can tell only what you yourself personally did on this occasion; and the jury is instructed to not consider the evidence as to what "we" did.' 'Well, I went to the courthouse. When I got to the courthouse, the abstract was in the box, the abstract to the hundred acres of land in controversy; I gave the abstract to the abstract man.' Mr. Altman: 'This witness testifies that deceased was with him during the trip to the law offices, to the locksmith's, and to the courthouse, and I ask the court to exclude all this testimony from the jury, on the ground that it is a transaction with a deceased person.' The Court: 'The jury will not consider anything Mr. Heath did, but only what Mr. Moore himself did on this occasion.' Mr. Altman: 'We except to the ruling of the court.' 'I next saw the abstract about 2:40 that afternoon, when it came into my office at Arlington.'

"Before this testimony was admitted, as a preliminary question, defendant's attorney asked said witness if the deceased, Heath, was with him on this trip to Ft. Worth, and during the transaction about which said witness proposed to testify. To this question, the plaintiff answered, 'Yes.' To the testimony of this witness, given above, defendant then and there objected, on the ground that said testimony related to transactions had with the deceased and plaintiff, and was not admissible under article 2302 of the Revised Statutes. This objection the court overruled, and the testimony of said witness, as above set out, was permitted to go before the jury, to which said action of the court the defendant then and there excepted, and here now tenders this, his bill of exception, and prays that the same be examined, signed, and approved by the court and ordered filed as a part of the record in this cause."

Error is assigned to the action of the court and to the evidence as shown in the bill of exception. Appellee insists, first, that either party may testify to his own acts or transactions, acting under a contract with a de-

ceased party, after such contract is independently proven, even though such testimony would materially affect the transaction with the deceased; second, that the evidence complained of is not prohibited by article 2302 of the Statutes, because it was brought out by appellants; and, third, that the testimony complained of did not prove any material fact not otherwise established. We are of the opinion, however, that these contentions fail to meet appellant's assignment of error to the introduction of the testimony. Article 2302 provides that: "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." The record fails to show that any other witness detailed the transactions disclosed by the bill of exceptions; and it seems impossible to escape the conclusion that Moore's testimony related to a transaction with a deceased person, as stated. The issues were whether Moore was Heath's agent or a mere volunteer, and, if but a volunteer, whether he performed services within the knowledge of the deceased entitling him to a recovery under a quantum meruit; and, under such circumstances, to permit Moore to give the details of his trip to Ft. Worth and subsequent actions, during all of which time the deceased was present, seems in direct contravention of the statute quoted. According to the testimony set forth in the bill, the "iron box" was evidently the private property of the deceased; appellee was permitted to secure it, to take it to a locksmith's, and take therefrom an abstract of title, covering the land in dispute, and go with it to the courthouse, all in furtherance of the sale, and all evidently in the presence of T. J. Heath and with his consent. The natural inference therefrom was in favor of appellee, both on the issue of a contract vel non and of a quantum meruit; and it would be but an evasion to hold otherwise, or to hold that the transaction was not with the deceased, Heath.

For the above error, we think the judgment must be reversed, and the cause remanded.